UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ARTURO NOGUEDA, on behalf of himself and all other employees similarly situated, known and unknown, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 2:09-CV-374 ) |
| GRANITE MASTERS, INC., an Indiana corporation, SLOBODAN MILUTINOVIC, individually, and LJILJANA MULUTINOVIC, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

Plaintiff Arturo Nogueda alleges that Defendants Granite Masters, Inc., Slobodan Milutinovic, and Ljijana Mulutinovic (collectively "Granite Masters") violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Nogueda seeks to prosecute this matter as a collective action under 29 U.S.C. § 216(b). Before me is Nogueda's motion for an order to authorize notice to similarly-situated persons pursuant to § 216(b). [DE 8.] Because Nogueda failed to make the necessary factual showing to permit notice, his motion is denied.

**BACKGROUND**

Nogueda is a former employee of Granite Masters. He alleges that Granite Masters failed to pay him (and other employees) time-and-a-half when they worked more than 40 hours in a work week. Nogueda requests that I authorize notice of this lawsuit to former and current

employees of Granite Masters. He also requests that I direct Granite Masters to stop seeking releases or waivers of FLSA claims from members of the putative class. [DE 8, at 11.]

In support of his motion, Nogueda submitted his affidavit, copies of his pay stubs, and the pay stubs of Eduardo Perez, Nogueda's son who was also previously employed by Granite Masters. [DE 8-1 to 8-7.] In his affidavit, Nogueda states that he worked in granite fabrication at Granite Masters from August 2007 through July 2009. [DE 8-5, at 2.] He states that he often worked at least 57 hours a week, and that he never received overtime compensation. [DE 8-5, at 2.] The affidavit describes in detail the manner in which Granite Masters allegedly made payments to Nogueda. According to Nogueda, from August 2007 to March 2008 he received two separate checks for his work week; one check for 40 hours and a second for the overtime hours at the same rate as the initial 40 hours. [DE 8-5 ¶¶ 9-10.] Nogueda then goes on to allege that other employees – referred to merely as Juan, Isais, Guillermo, Gonzalo, Carlos, Eduardo, Edwing, Fabian, and Francisco – received payment in the same manner. [DE 8-5 ¶ 24.] But none of those individuals submitted an affidavit agreeing with Nogueda's assessment.

Nogueda also alleges that Defendant Slobodan Milutinovic held a meeting with Nogueda and other employees about this system in February 2008, and in March 2008 Nogueda began receiving one check each week. [DE 8-5 ¶¶ 13-14.] But according to Nogueda, after this shift to one check per week, Granite Masters continue to cheat him, but in a different way. The hours listed on his pay stubs were fewer than the hours that he actually worked. [DE 8-5 ¶¶ 15-17.]

Nogueda alleges that he was terminated after he sent Granite Masters a letter demanding payment of unpaid overtime compensation. [DE 1, at 2.] He brought this action alleging, among other things, FLSA violations on behalf of himself and the collective class.

2

**DISCUSSION**

The FLSA requires employers to pay at least time-and-a-half for any overtime hours that qualified employees work during a week. 29 U.S.C. § 207(a)(1). Under 29 U.S.C. § 216(b), an employee may bring an action to recover unpaid overtime compensation on "behalf of himself . . . and other employees similarly situated." This is known as a "collective action." *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). However, no employee may be a party plaintiff to a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Collective actions under the FLSA are fundamentally different than class actions under Fed. R. Civ. P. 23. Plaintiffs in a collective action must "opt-in" to the action to be bound by a judgment, while plaintiffs in a Rule 23 class action must "opt-out." *See King v. General Electric Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Because of the "opt-in" requirement, a representative plaintiff in a collective action has to be able to inform other individuals who may have similar claims that they may join his lawsuit. *Austin v. CUNA Mutual Ins. Co.*, 232 F.R.D. 601 (W.D. Wis. 2006).

Section 216(b) does not provide explicitly for court-ordered notice. Nonetheless, the Supreme Court has held that, in appropriate cases, district courts have the discretion to implement § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Such court-authorized notice serves the broad, remedial purpose of the FLSA and comports with the court's interest in managing its docket. *Id*. at 172-74.

The FLSA neither defines the term "similarly-situated" nor instructs courts when to exercise their discretion and authorize notice to potential plaintiffs. Nevertheless, a majority of federal courts have adopted a two-step approach. The first step requires plaintiffs to make a modest factual showing that they and the other employees to whom notice is to be sent were victims of a common policy or plan that violated the law. *See, e.g., Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); *Nunez v. Pizza Nova, Inc.,* 2003 WL 23150111, at *1 (N.D. Ill. Dec. 30, 2003); *Austin v. CUNA Mutual Ins. Co.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006); *Mielke v. Laidlaw Transit*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). Though lenient, the "modest factual showing" standard is not a mere formality. *See, e.g., Flores*, 289 F. Supp. 2d at 1045-46 (evidence of defendant's payment practice concerning two out of 50 employees without more did not provide modest factual showing that employer had a common policy or plan to violate the FLSA). If plaintiffs make this modest factual showing, then notice and an opportunity to "opt in" can be sent to those employees who are similarly situated to the named plaintiffs. *See Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003); *Flores*, 289 F. Supp. 2d at 1045. The action then proceeds through discovery as a representative or collective action.

The second step of the analysis occurs at the close of discovery when the defendant can move to dismiss the opt-in plaintiffs in light of the record developed during discovery. *See, e.g., Cameron-Grant*, 347 F.3d at 1243 n.2; *Flores*, 289 F. Supp. 2d at 1045. In such a case, the court must determine whether the plaintiffs who have opted into the lawsuit are, in fact, similarly-situated to the representative plaintiffs. *Id*. If the court finds that any of them are not similarly-

situated to the representative plaintiffs, they are dismissed from the lawsuit without prejudice. *Id.*, *Kane v. Gage Merchandising Services, Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001).

For now, I need not go past step one. The issue for present purposes is whether Nogueda made a modest factual showing that he and all other former or current hourly employees at Granite Masters were victims of a common policy or plan that violated the law.

Nogueda hasn't satisfied this minimal burden. In support of the argument that he is similarly situated to other Granite Masters employees, he submitted his affidavit, his pay stubs, and some pay stubs of his son and former Granite Masters employee, Eduardo Perez. But these submissions do not meet the minimal showing required because Nogueda did not submit any affidavits beyond his own.

Nogueda's affidavit provides factual allegations as to his experience with Granite Masters. Nogueda alleges that he spoke with his co-workers about their overtime hours, and they stated that they did not receive overtime payment either. [DE 8-5, at 3-5.] He lists the first names of nine other individuals who are allegedly employed at Granite Masters, alleging that they are afraid to come forward because he was fired immediately after bringing this lawsuit. [DE 8-5 ¶¶ 20-21.] He states that these individuals were also subject to the two-check system as well as the single-check system that inaccurately listed hours worked. He also states that he observed co-workers receive these checks and has seen the inaccurate pay stubs, but he does not provide any documentation about these other current employees of Granite Masters. [DE 8-5 ¶ 23.] And he has not alleged that these other employees share similar responsibilities as him.

As mentioned, Nogueda did not submit any additional affidavits. Instead, Nogueda submitted a sampling of his pay stubs as exhibits. Exhibit A contains what appear to be

5

photocopies of his pay stubs spanning between April 7, 2008 and February 22, 2009. [DE 8-1; DE 8-2; DE 8-3.] Exhibit A-1 is an example of a week where Granite Masters allegedly rounded down the number of hours Nogueda worked. [DE 8-2.] Exhibit A-2 is allegedly an instance where Granite Masters completely failed to pay overtime compensation. [DE 8-3.] Exhibit D includes the pay stubs that included overtime compensation payments, but allegedly recorded a lesser number of hours than Nogueda actually worked. [DE 8-6.] These exhibits support Nogueda's allegations that Granite Masters violated the FLSA *as to him.* But this isn't evidence that Granite Masters did the same thing to other employees.

Nogueda's only attempt to demonstrate a common policy is his submission of Exhibit E, which includes copies of pay stubs from his son Eduardo Perez. [DE 8-7.] But unlike his own pay stubs which evidence a violation of the FLSA, Perez's pay stubs prove nothing at all. Admittedly, there is one pay stub of Perez that is odd; it shows that Perez received $711.90 for one hour of work, and $250.00 for one hour of work in one week. [DE 8-7, at 2.] That of course has to be a mistake. It's not likely that Granite Masters was paying its workers $700 per hour! What would have been helpful, and much more persuasive, is if Perez's pay stubs were accompanied by an affidavit explaining – like Nogueda's – how Granite Masters was violating the overtime provisions of the FLSA. Inasmuch as Perez is no longer employed by Granite Masters and is Nogueda's son, the lack of an affidavit from Perez is telling. In the absence of such evidence, Perez's pay stubs don't prove much.

Moreover, the irregularity Nogueda points out in Perez's pay stub occurred once – in February 2008; none of Perez's other pay stubs submitted include a similar irregularity. What is more, the irregularity is not similar to the irregularity in Nogueda's pay stub. While Nogueda's

alleged irregularity is that he received two checks at the same rate, the irregularity in Perez's pay stub is that he received substantially different pay rates for the same time worked.

In sum, all that Nogueda has presented to me in support of his required modest factual showing is his own affidavit. This is simply not enough to require that notice be sent to other employees. *See Flores*, 289 F. Supp. 2d at 1045. Of course, nothing in this Order prevents any of those other employees from bringing their own lawsuit against Granite Masters should they believe that they too have been cheated on their pay.

Nogueda also requests that I enter a protective order directing Granite Masters to stop communicating with potential class members. [DE 8, at 11.] He provides no factual basis or authority for this argument, and Granite Masters points out that a protective order may interfere with the potential class members' rights. [DE 10, at 12.] A protective order prohibiting communication between parties and a putative class must be based on a "clear record and specific findings showing the need for such an order." *Williams v. Chartwell Fin. Servs., Inc.*, 204 F.3d 748, 759 (7th Cir. 2000) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981)); *see Flores*, 289 F. Supp. 2d at 1045.

Here, Nogueda alleges that a protective order is appropriate because the employees are afraid of retaliation, but he provides nothing to support this assertion. Because his allegation of a fear of retaliation falls short of a "clear record" of the need for a protective order, Nogueda's request that I order Granite Masters to stop seeking waivers or releases is also denied.

## **CONCLUSION**

Based on the foregoing, Plaintiffs' motion for court-authorized notice [DE 8] is **DENIED**, and Nogueda's request for a protective order is also **DENIED**.

**SO ORDERED.**

Dated: April 14, 2010

                                              s/ Philip P. Simon
                                              PHILIP P. SIMON, CHIEF JUDGE
                                              UNITED STATES DISTRICT COURT